UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal Case No. 08-CR-142 (JR) |
| BRANDON M. GORE | : | Sentencing: September 4, 2008 |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum in support of the government's sentencing recommendation.

**BACKGROUND**

1. There were two guilty plea proceedings in the above-captioned case. For reasons that will explained shortly, a discussion of both proceedings is necessary for the government to support its sentencing recommendation to the Court. The first plea proceeding occurred on May 22, 2008, pursuant to the defendant's agreement with the government. Under the terms of the first plea, the defendant pled guilty to one count of Unlawful Possession with Intent to Distribute 100 Grams or More of a Mixture or Substance Containing a Detectable Amount of Phencyclidine (PCP), in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(iv), and one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). With respect to the drug charge, the defendant specifically acknowledged that in terms of his relevant criminal conduct, he was accountable for more than 400 grams but less than 700 grams of a mixture or substance containing a detectable amount of PCP.

2. As the defendant acknowledged possessing more than 100 grams, he was facing,

inter alia, a mandatory minimum sentence of at least five years' imprisonment, up to forty years in prison, a fine of up to $2,000,000.00, an obligation to pay any applicable interest or penalties on fines not timely made, and a term of supervised release of at least four years. 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iv). He also faced additional penalties for the offense of Unlawful Possession of A Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, including a term of imprisonment of up to 10 years, a fine of up to $250,000, an obligation to pay any applicable interest or penalties on fines not timely made, and a concurrent term of supervised release not to exceed three years. 18 U.S.C. §§ 924(a)(2), 3571, 3583, and 3624(e).

3. Pursuant to the United States Sentencing Commission, Guidelines Manual (2007) (hereinafter "Guidelines" or "U.S.S.G"), under the terms of this first plea, the defendant's total offense level, would have been twenty-seven. See U.S.S.G. §§ 2D1.1(c), 2D1.1(b)(1), 3E1.1(a) and (b). With seven criminal history points and a criminal history category of IV (See PSR at ¶¶ 26-29), the defendant's guideline range for imprisonment pursuant to this initial plea would have been 100-125 months of incarceration.

4. In support of the initial plea agreement, the defendant signed a factual proffer in which he admitted the following facts. On March 19, 2008, at approximately 2:57 p.m., Detective Bob Scherr and Detective Timothy Hodge of the United States Park Police, were traveling in the area of Florida Avenue and Eckington Place, N.E., Washington, D.C. They observed a gray Saturn bearing Maryland registration number 8CR-L84 with a cracked windshield traveling westbound on Florida Avenue. The defendant was the driver and sole occupant. He was not wearing a seatbelt. He avoided the appropriate travel roadway by turning off Florida Avenue, driving through a gas

station parking lot onto P Street, N.E.

5.   Detective Hodge conducted a traffic stop on the Saturn and made contact with the defendant. He advised the defendant of his infractions and requested his driver's license and vehicle registration. Detective Hodge immediately detected an odor of PCP coming from the vehicle. The defendant was visibly shaken. His hands were shaking. He provided the registration card and said the car belonged to a family member. After patting all his pockets, he admitted to not having a permit on his person. When asked, the defendant provided a false name of Quinton Isaiah Gore (which he spelled incorrectly), and a false birthdate of "7/15/88", which he then "corrected" to a false birth month of June. (His actual birthday is July 27, 1986.) During this roadside interview with the defendant, the odor of PCP increased.

6.   The defendant was arrested for failing to exhibit a permit. In a search incident to arrest, police recovered a total of $422.00 in U.S. currency from the defendant's pockets. The police searched the Saturn. In the center console, they found an unknown brown substance packaged like illegal narcotics and rolling papers. On the rear passenger side floorboard, they recovered a sixteen-ounce Schweppes Ginger Ale plastic soda bottle which was approximately half-full of PCP. In the engine compartment, they recovered a clear ziplock bag containing seven one-ounce bottles of PCP, and a silver fully loaded silver Taurus .357 magnum revolver. The amount of PCP recovered and its packaging is consistent with distribution and not personal use. Before the defendant came into possession of the revolver, the revolver had been shipped and transported in interstate commerce. The defendant had previously been convicted of a crime which is punishable by more than one year's imprisonment.

7.   At the time the defendant entered his initial plea, the government had not received

the laboratory report (a "DEA-7") analyzing the drugs at issue in this case. Shortly after the defendant entered the above-described plea, the undersigned received the DEA-7, and relied upon it for the proposition that the defendant possessed substantially less than fifteen ounces of a PCP mixture. Specifically, according to the front page of the DEA-7, the total net weight of the PCP mixture analyzed was only 34.7 grams. (A copy of the DEA-7 is attached as Exhibit 1.) At a rate of 28.35 grams to one ounce, the DEA-7 appeared to reflect that the defendant had little more than one ounce of PCP mixture. The government immediately notified the Court and defense counsel, and consented to the defendant's withdrawal of the plea. The defendant was extended a revised plea offer, which he accepted, and he entered the plea at a hearing on June 24, 2008.

8.  Under the terms of the revised plea agreement, the defendant pled guilty to one count of Unlawful Possession with Intent to Distribute a Mixture or Substance Containing a Detectable Amount of PCP, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). The defendant admitted that his total relevant criminal conduct included possessing 20 to 40 grams of a mixture containing PCP, instead of 400 to 700 grams of such a mixture.

9.  As a result of pleading guilty to Unlawful Possession with Intent to Distribute PCP under Section 841(b)(1)(C), instead of to the 100-gram minimum of Section 841(b)(1)(B)(iv), the defendant now faces substantially lower statutory penalties. There is no longer a mandatory minimum sentence, the maximum sentence is 20 years instead of 40 years, the maximum fine is $1,000,000.00 instead of $2,000,000, and the minimum term of supervised release is three years instead of four. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); 18 US.C. § 3624(e). The defendant is also

eligible for a period of probation of ranging from one to five years. 18 U.S.C. § 3561(c)(1).[1]

10.  As a result of the reduction in the defendant's total acknowledged relevant criminal conduct, the defendant's guideline range for imprisonment under the revised plea is 37 to 46 months of imprisonment, instead of 100 to 125 months of imprisonment. See PSR at ¶¶ 14-22, 26-29, 61. His guideline range for a term of supervised release is three years. See PSR at ¶ 66. The defendant is not eligible for probation under the Guidelines. See PSR at ¶ 71.

11.  Notwithstanding the change in the terms of the plea agreement based on the undersigned's interpretation of the DEA-7, the factual proffer signed by the defendant which supported the revised agreement was not materially different from the first proffer. The defendant still admitted that the police recovered fifteen ounces of PCP (one half-full sixteen ounce bottle, and seven one-ounce bottles), which is the equivalent to 425 grams of PCP. However, based on the DEA-7, language was added to the revised proffer which indicated that the police recovered 34.7 grams of PCP. This created an admitted internal inconsistency in the factual proffer. (Photographs of the actual evidence recovered by the police are attached as Exhibit 2.)

12.  At about the time the undersigned began preparing the instant sentencing memorandum, the government learned that the Drug Enforcement Administration ("DEA") had recently begun enforcing a policy of refusing to accept more than one ounce of suspected PCP for testing, as a result of accidents involving injuries at the laboratory. After carefully reviewing the second page of the DEA-7, and speaking with the lead officer in this case, the undersigned learned that evidence submitted to the DEA in this cases consisted of "samples" of the suspected controlled

---

[1] The consequences for Unlawful Possession of A Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, described above, remain unchanged under the revised plea.

substances that were actually seized.

13.    The government also learned for the first time that the officer who processed the seized items did so in a manner that makes the precise measurement of the volume of the mixture and substance containing PCP impossible through forensic analysis alone. Rather than taking a sample from each bottle containing the suspected PCP, the officer combined the contents of the half-full sixteen ounce bottle and the seven one-ounce bottles into three containers. He then took a sample from each of the three containers, and those are the samples that the DEA analyzed and found to contain PCP.

14.    Given the co-mingling of the contents of the bottles, it is not possible through forensic analysis alone to determine the precise amount of PCP in each bottle. The facts and circumstances of this case, however, are such that the Court can conclude that each container did in fact contain PCP, and that the amount of the mixture containing PCP was at least, if not more than, 34.7 grams. First, at both plea proceedings, the defendant admitted under oath that he possessed fifteen ounces of a mixture or substance containing PCP, an amount equivalent to 425 grams, considerably more than the 34.7 grams at issue in this sentencing. Second, he admitted that the amount of PCP recovered and its packaging is consistent with distribution and not personal use. Third, evidence at a trial would show that the seven one-ounce bottles recovered are the type of bottles that are typically used to sell PCP in this area, and that they are not used to sell any other controlled substances. Fourth, the seven one-ounce bottles were hidden in the engine compartment, demonstrating the defendant's knowledge that they contained illegal narcotics. Fifth, with respect to the half-full sixteen-ounce bottle, its location in the passenger compartment, combined with the strong odor associated with PCP coming from the vehicle when the police first approached, supports

the conclusion that it contained PCP. Although the solvent used to make PCP is a non-controlled substance and gives off the same odor as a PCP mixture, evidence at a trial would show that the PCP which is sold in the District of Columbia is manufactured and diluted elsewhere, i.e., that PCP is not mixed with solvent in this jurisdiction. In any event, it is unlikely that the defendant was mixing PCP and solvent in his car, in light of the absence of materials associated with that process, such as masks and beakers. Finally, Lois C, Geer, the Senior Forensic Chemist who analyzed the PCP samples in this case, reviewed a database of PCP exhibits analyzed at the DEA's Mid-Atlantic Laboratory between January and June of 2008. Her preliminary research located five cases submitted by the Metropolitan Police Department in Washington, D.C. The potency range in those five cases was 53.4 to 171.9 milligrams per milliliter. In the instant case, the potency range of the three PCP samples submitted was 64.3 to 67.8 milligrams per milliliter, suggesting that the PCP mixture in this case is of a typical potency for this area. In other words, it is unlikely that the mixture here was further diluted by the officer's co-mingling of the contents. In summary, there is sufficient evidence that the defendant possessed at least 20 to 40 grams of a mixture or substance containing PCP, the amount he acknowledged at the second plea proceeding, and for which he is to be sentenced.

## APPLICABLE LAW

16.     In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 756. Nonetheless, and as the Supreme Court

stated earlier this month, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, _____ U.S. _____, 2007 WL 4292116, at *7 (December 10, 2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark").

17.    Once the Court determines the applicable guideline range, the Court should consider all of the applicable factors set forth in Title 18 United States Code, Section 3553(a), in determining whether such factors support the government's requested sentence. Id. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. §3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

**GOVERNMENT'S SENTENCING RECOMMENDATION**

18.    If the Court finds that the guideline range identified in the presentence report is the applicable guideline range, the government recommends that the Court sentence the defendant to 46 months of incarceration, followed by three years of supervised release. This sentence, at the high end of the Guidelines, is warranted because of the nature and circumstances of the defendant's criminal actions in this case, his criminal history, and the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.

**ARGUMENT**

19. The defendant's conduct in this case posed several dangers to the community. His possession of a loaded gun and drugs together is, by statute and by common sense, "dangerous." His conduct was also dangerous because of the incredible harm that drugs do to a community. In this regard, PCP use is associated with a number of risks, and many believe it to be one of the most dangerous drugs of abuse. Consequences of PCP use may include numbness, slurred speech, loss of coordination, rapid and involuntary eye movements, auditory hallucinations, image distortion, severe mood disorders, and amnesia. In some users, PCP use may result in acute anxiety, a feeling of impending doom, paranoia, violent hostility, and a psychoses indistinguishable from schizophrenia. *See* Drug Enforcement Administration, *Drugs of Abuse,* 56 (2005), also located at http://www.usdoj.gov/dea/pubs/abuse/doa-p.pdf. At a rate of 75 to 85 dippers per one-ounce bottle, just one ounce of PCP represents 75 to 85 opportunities for a user to become violent and paranoid. The Court's sentence should reflect the extensive danger in which the defendant placed the community.

20. At the age of 22, the defendant has already had a number of significant contacts with the criminal justice system which demonstrate that he is leading a dangerous drug dealer lifestyle, and has no intentions of complying with the law. He was arrested in October of 2005 for driving under the influence ("DUI") in an accident where he struck another vehicle, fled the scene, and refused to cooperate with police. In March of 2006, while pending sentencing in that case, he was arrested in the District of Columbia for Possession with Intent to Distribute PCP While Armed ("PWIDWA"). In that case the officers recovered a loaded .357 Smith and Wesson firearm, fitted with muzzle flash suppressor, and six clear bottles of a "clear liquid," from a car in which the

defendant was a passenger. After that arrest, the defendant was given twelve months of probation in the DUI case. In January of 2007, with a pending PWIDWA case and while on probation in the DUI case, the defendant was arrested for a drug distribution offense in Maryland. (That case is still pending, and involves apparent cocaine and/or crack cocaine being recovered from a vehicle he was driving.) He failed to report that arrest to his probation officer. In October of 2007, he pled guilty to Carrying a Pistol Without a License in the PWIDWA case, and received a suspended sentence with credit for time served. He was released from custody on January 8, 2008, and used that opportunity to commit the offenses making up the instant case a little more than two months later.

WHEREFORE, based upon the above, and the information reflected in the presentence report, the United States respectfully recommends a sentence of a period of 46 months of incarceration, followed by a three-year period of supervised release.

    Respectfully,
    JEFFREY A. TAYLOR
    United States Attorney

    _____/s/_____
    Emily A. Miller
    Assistant United States Attorney
    Federal Major Crimes Section
    555 4th Street, N.W.  #4237
    Washington, DC 20530
    Phone: 514-7533; Fax: 514-6010
    D.C.  Bar No. 462077



U.S. Department of Justice

Drug Enforcement Administration

## LABORATORY REPORT

TO:  United States Park Police  
      Washington, DC

CASE NUMBER: 08-009714

FROM: Mid-Atlantic Laboratory  
          Largo, Maryland

| Exh. No. | Lab. No. | Active Drug Ingredient (Established or Common Name) | Gross Weight | Net Weight | Conc. or Purity | Amount of Actual Drug | Reserve Weight |
|---|---|---|---|---|---|---|---|
| 100 | Z24354 | phencyclidine (calc. as HCl) and 1-piperidinocyclohexanecarbonitrile | 108.6 g | 10.9 mL (12.6 g) | 67.8 mg/mL ± 5.2 mg/mL* | 0.73 g | 9.6 mL (11.0 g) |
| 200 | Z24355 | phencyclidine (calc. as HCl) and 1-piperidinocyclohexanecarbonitrile | 105.7 g | 8.9 mL (10.3 g) | 66.6 mg/mL ±5.1 mg/mL* | 0.59 g | 7.5 mL (8.7 g) |
| 300 | Z24356 | phencyclidine (calc. as HCl) and 1-piperidinocyclohexanecarbonitrile | 107.5 g | 10.2 mL (11.8 g) | 64.3 mg/mL ± 5.1 mg/mL* | 0.65 g | 8.9 mL (10.3 g) |

Remarks:  
Gross Weight includes the weight of all packaging materials and the evidence envelope.

*This value represents the quantitative uncertainty measurement for the DEA laboratory system.

Certification of Compliance Pursuant to D.C. Code § 48-905.06 (2001)

    I attest and certify that I am a trained chemist employed by the United States Department of Justice, Drug Enforcement Administration, that I am charged with an official duty to perform analyses of suspected controlled substances, and that I have legal custody of this report.

    All suspected controlled substance containers received by Drug Enforcement Administration chemists bear unique Drug Enforcement Administration laboratory numbers. When I received the container(s) bearing the laboratory number(s) set out above, I inspected the container(s) and verified that a sealed condition existed and then properly analyzed the contents for the presence of controlled substances by methods which are reliable and relevant to the identification of a controlled substance which includes procedures generally accepted in the forensic science community. These methods employed chemical reagents and/or analytical instruments which were free of contamination and were operating properly.

    The analyses that I conducted were accomplished while safeguarding the chain of custody of the substances being analyzed. The results of my analyses are accurately set forth on this official report. After I completed my analyses, I placed all contents (except for the substance(s) consumed or those removed for other purposes) back into the original container(s) which I then sealed in such a manner that any tampering would be readily evident. In the case of evidence submitted by a **Federal** agency, the officially sealed container(s) bearing the above laboratory number(s) was returned to the DEA evidence vault for subsequent transmittal to the submitting agency for proper storage.

Analyzed By: _Lois C. Geer, Senior Forensic Chemist_  
(Signature, Printed Name, Title)

Date: May 13, 2008

Approved By: _James V. Malone, Laboratory Director_  
(Signature, Printed Name, Title)

Official DEA Seal

Date: 5/19/08

Form LS-05-010 (July 2005)                                             Page 1 of 1

U.S. Department of Justice
Drug Enforcement Administration

Read Instructions on Reverse before completing.

REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

| 1. HOW OBTAINED (Check) | | | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|---|---|
| ☐ Lab. Seizure ☐ Internal Body Carry | ☐ Purchase ☐ Money Flashed ☐ Other (Specify) | ☒ Seizure ☐ Free Sample ☐ Compliance Sample (Non-Criminal) | 08—009714 | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE |
|---|---|---|
| WASHINGTON, DC | 03/19/2008 | DEF: GORE, Brandon Marion |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL ☐ Case No. OR ☐ Seizure No. | 7. DATE PREPARED | 8. GROUP NO. |
|---|---|---|---|
| U.S. PARK POLICE WDC | | 05/05/2008 | |

| 9. Exhibit No. | 10. FDIN (8 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 100 | | PCP | Nalgene bottle containing glass bottle containing sample PCP from #11/bottle 1 | | 108.3g | |
| 200 | | PCP | Nalgene bottle containing glass bottle containing sample PCP from #11/bottle 2 | | 107.9g | |
| 300 | | PCP | Nalgene bottle containing glass bottle containing sample PCP from #11/bottle 3 | | 106.9g | |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?   ☐ NO (included above)   ☒ YES (if Yes, enter exhibit no. and describe original container fully)

REMARKS:

Item #9: 1 clear ziplock baggie containing 7 (1 ounce) glass bottles that held PCP.
Item #10: 1 green plastic soda bottle 'Schweppes Ginger Ale' that held PCP.
Item #11: bottles 1, 2 & 3 containing PCP from #9 & #10.

ASSIGNED OFFICERS NAME:
Case Officer: S. D'Augostine #105

| 17. SUBMITTED BY SPECIAL AGENT (Signature) | 18. APPROVED BY (Signature & Title) |
|---|---|
| T. Hodge # 418 | |

LABORATORY EVIDENCE RECEIPT REPORT

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| 3 | 05-06-2008 | SB Hi, WD 087 |
| 22. SEAL ☐ Broken ☒ Unbroken | 23. RECEIVED BY (Signature & Date) 5/6/08 | 24. Print or Type NAME and TITLE N. Macgregor, ST |

LABORATORY REPORT

25. ANALYSIS SUMMARY AND REMARKS

Z 24354     Z 24355     Z 24356

**SEE ATTACHED**

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| 37. APPROVED BY (Signature & Date) | 38. TITLE | 39. LAB. LOCATION |

DEA Form - 7      Previous edition dated 4/90 may be used until stock is exhausted.

**U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION**

## FORENSIC CHEMIST WORKSHEET

Page 1 of 2

| RECEIVED | | 3. SEALS | 4. FILE NO./EXHIBIT NO./LAB NO. |
|---|---|---|---|
| 1. FROM | 2. DATE | [X] Intact  [ ] Broken  [ ] None | 08-009714 / exh 100 / Z24354 |
| R Taylor | 5/12/08 | | |

**5. DESCRIPTION OF EVIDENCE**

1 HSEE contg Exh 100 — 1 HS evidence envelope contg 1 Nalgene bottle sealed w/ evidence tape contg 1 glass vial contg clear yellow liquid

**6. SUMMARY OF FINDINGS**

gross  108.6 g
net    10.9 mL (12.6 g)

Exhibit 100 contains phencyclidine (calc as HCl)
                     1-piperidinocyclohexanecarbonitrile

\* This value represents the quantitative uncertainty measurement estimate in the DEA Laboratory system

| 7. EXH. NO. | 8. LAB. NO. | 9. ACTIVE DRUG INGREDIENT | 10. QUANTITATIVE RESULTS | 11. AMT. OF PURE DRUG | 12. RESERVE |
|---|---|---|---|---|---|
| 100 | Z24354 | phencyclidine (calc as HCl) | *67.8 mg/mL ± 5.2 mg/mL | 0.73 g | 9.6 mL (11.0 g) |
| | | ~~1-piperidinocyclo~~ | | | |

**13. RESERVE EVIDENCE**

reserve in original vial → original Nalgene bottle → inside HS, sealed → original HSEE, sealed & returned to vault

| 14. FORENSIC CHEMIST'S SIGNATURE | 15. DATE REPORTED | 16. REVIEWED BY (Initials) & DATE |
|---|---|---|
| Lois C. Heer | 5/13/08 | JMM 5-16-08 / SXM 5/14 |

**17. REMARKS**

7471.900
8603.000

jr 5/19/08

FORM DEA-86 (6-00) Previous editions are obsolete.

FILE NO. 08-0097114   EXHIBIT NO. 100   LAB NO. 724354

GROSS WEIGHT: 108.6 g   balance 364005

DATE OPENED: 5/12/08   [initials]

NET WEIGHT:

gross   34.2644 g
tare    21.6482 g                balance 364126 used unless noted
net     12.6162 g × 0.867 g/mL = 10.9 mL

EVIDENCE SAMPLING PROCEDURES: 1 of 1, ESP followed

QUALITATIVE:

density
  5.0 mL = 4.3393 g
  density = 0.867 g/mL

gc-ms in 4:1 CHCl$_3$:MeOH w/ C24
  blank negative
  PCC, PCP

gc screen — in 4:1 CHCl$_3$:MeOH w/ C24 — blank negative
  5 mg/1mL
  PCC, PCP

QUANTITATION:

METHOD #: GCP 401

balance 364183 → STANDARD: PCP HCl lot Kansas City  13.2 mg/25 mL (in CHCl$_3$ w/ 0.4 mg C22)
                                                    (0.528 mg/mL)
DATE PREPARED: 5/7/08

SAMPLE:
  1 mL/50 mL   3 mL/10 mL

  PCP as HCl = 67.8 mg/mL
  uncertainty ± 0.6% × 867 mg/mL = 5.2 mg/mL
  pure drug  67.8 mg/mL × 10.9 mL = 739.0 mg

RESERVE WEIGHT: balance 364126     SPECIAL PROGRAMS: NA

gross  32.7223 g
tare   21.6482 g
net    11.0741 g × 0.867 g/mL = 9.6 mL

GROSS WEIGHT AFTER ANALYSIS: balance 364005    DATE SEALED: 5/13/08
  107.2 g

FORM DEA-86 (6-00) Reverse                *U.S. Government Printing Office: 2002 — 491-387/52008

**U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION**
**FORENSIC CHEMIST WORKSHEET**   Page 1 of 2

| RECEIVED | | 3. SEALS | 4. FILE NO./EXHIBIT NO./LAB NO. |
|---|---|---|---|
| 1. FROM | 2. DATE | ☒ Intact ☐ Broken ☐ None | 08-009714 / exh 200 / Z24355 |
| R Taylor | 5/12/08 | | |

**5. DESCRIPTION OF EVIDENCE**
1 HSEE contg Exh 200 - 1 HS evidence bag contg 1 Nalgene bottle sealed w/ evidence tape contg 1 glass vial contg clear yellow liquid

**6. SUMMARY OF FINDINGS**
gross 105.7 g
net 8.9 mL (10.3 g)

Exhibit 200 contains phencyclidine (calc as HCl)
1-piperidinocyclohexanecarbonitrile

\* This value represents the quantitative uncertainty measurement estimate for the DEA Laboratory system

| 7. EXH. NO. | 8. LAB. NO. | 9. ACTIVE DRUG INGREDIENT | 10. QUANTITATIVE RESULTS | 11. AMT. OF PURE DRUG | 12. RESERVE |
|---|---|---|---|---|---|
| 200 | Z24355 | phencyclidine (calc as HCl) | *66.6 mg/mL ± 5.1 mg/mL | 0.59 g | 7.5 mL (8.7 g) |
| | | | | | |

**13. RESERVE EVIDENCE**
reserve in original vial → original Nalgene bottle → inside HS, sealed → original HSEE, sealed & returned to vault

| 14. FORENSIC CHEMIST'S SIGNATURE | 15. DATE REPORTED | 16. REVIEWED BY (Initials) & DATE |
|---|---|---|
| [signature] | 5/13/08 | mm 5-16-08  SKN 5/19 |

**17. REMARKS**
7471.900
8603.000

[signature] 5/19/08

FORM DEA-86 (6-00) Previous editions are obsolete.    Electronic Version Designed in JetForm 5.2 Version

FILE NO. 08-009714    EXHIBIT NO. 200    LAB NO. Z24355

**GROSS WEIGHT:** 105.7 g              balance 364005
**DATE OPENED:** 5/12/08  [initials]   balance 364126 used unless noted
**NET WEIGHT:**
  gross 31.6636 g
  tare  21.3282 g
  net   10.3354 g × 0.866 g/mL = 8.9 g as mL

**EVIDENCE SAMPLING PROCEDURES:** 1 of 1, ESP followed

**QUALITATIVE:**
density
5.0 mL = 4.3300 g
density = 0.866

gc/ms in 4:1 CHCl$_3$:MeOH w/ C24
  blank negative
  PCC, PCP

gc/screen — blank negative in 4:1 CHCl$_3$:MeOH w/ C24
5 mg/~1 mL
  PCC, PCP

**QUANTITATION:**
**METHOD #:** GPCPH01
**STANDARD:** PCP HCl lot Kansas City 13.2 mg/25 mL (0.528 mg/mL
**DATE PREPARED:** 5/7/08        balance 364183     in CHCl$_3$ w/ 0.4 mg/mL
**SAMPLE:** 1 mL/50 mL  5 mL/10 mL

PCP (as HCl) = 66.6 mg/mL
uncertainty = 0.6 % × 866 mg/mL = 5.1 mg/mL
                          as
pure drug = 592 mg

**RESERVE WEIGHT:** balance 364126          **SPECIAL PROGRAMS:** NA
  gross 30.0827 g
  tare  21.3282 g
  net   8.7545 g × 0.866 mg/mL = 7.5 mL
**GROSS WEIGHT AFTER ANALYSIS:** balance 364005      **DATE SEALED:** 5/13/08
  104.6 g

FORM DEA-86 (6-00) Reverse                *U.S. Government Printing Office: 2002 — 491-387/52008

**U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION**

## FORENSIC CHEMIST WORKSHEET

Page 1 of 2

| RECEIVED | | 3. SEALS | 4. FILE NO./EXHIBIT NO./LAB NO. |
|---|---|---|---|
| 1. FROM | 2. DATE | [X] Intact  [ ] Broken  [ ] None | 08-009714 / exh 300 / Z24356 |
| R Taylor | 5/12/08 | | |

**5. DESCRIPTION OF EVIDENCE**

1 HSEE contg Exh 300 - 1 HS evidence envelope contg 1 Nalgene bottle contg 1 glass vial contg clear colorless liquid

**6. SUMMARY OF FINDINGS**

gross  107.5 g
net    10.2 mL (11.8 g)

Exhibit 300 contains phencyclidine (calc as HCl)
1-piperidinocyclohexanecarbonitrile

\* This value represents the quantitative uncertainty measurement estimate for the DEA laboratory system

| 7. EXH. NO. | 8. LAB. NO. | 9. ACTIVE DRUG INGREDIENT | 10. QUANTITATIVE RESULTS | 11. AMT. OF PURE DRUG | 12. RESERVE |
|---|---|---|---|---|---|
| 300 | Z24356 | phencyclidine (calc as HCl) | 64.3 mg/mL ± 5.1 mg/mL | 0.65 g | 8.9 mL (10.3 g) |

**13. RESERVE EVIDENCE**

reserve in original vial → original Nalgene bottle → inside HS, sealed → original HSEE, returned to vault

| 14. FORENSIC CHEMIST'S SIGNATURE | 15. DATE REPORTED | 16. REVIEWED BY (Initials) & DATE |
|---|---|---|
| Joes C Geer | 5/13/08 | jmm 5-16-08 |

**17. REMARKS**

7471.900
8603.006

jmm 5/19/08

FORM DEA-86 (6-00) Previous editions are obsolete.    Electronic Version Designed in JetForm 5.2 Version

FILE NO. 08-009714   EXHIBIT NO. 300   LAB NO. Z24356

GROSS WEIGHT: 107.5g   balance 364005

DATE OPENED: 5/12/08   Laber

NET WEIGHT:
gross 33.3706 g   balance 364126 used unless noted
tare 21.5016 g
net 11.8690 g × 0.864 g/mL = 10.2 mL

EVIDENCE SAMPLING PROCEDURES: 1 of 1, ESP followed

QUALITATIVE:
density
4.3204 g in 5.0 mL
density = 0.864 g/mL
gc/ms in 4:1 CHCl$_3$ : MeOH w/ C24
12.0 mg / ~1 mL
blank negative ; Acc, PCP
gc screen in 4:1 CHCl$_3$ : MeOH w/ C24
blank negative
5 mg / ~1 mL
PCC, PCP

QUANTITATION:
METHOD #: GPCPH01
STANDARD: PCP HCl lot Kansas City 13.2 mg /25 mL (0.528 mg/mL)
   in CHCl$_3$ w/ 0.4 mg/mL C22
balance 364183
DATE PREPARED: 5/7/08

SAMPLE:
1 mL /50 mL   2 mL /10 mL

PCP (as HCl) = 64.3 mg/mL
uncertainty = 0.6% × 864 mg/mL = 5.1 mg/mL
pure drug = 655 mg

RESERVE WEIGHT: balance 364126   SPECIAL PROGRAMS: NA
gross 31.8845 g
tare 21.5016 g
net 10.3829 g × 0.864 g/mL = 8.9 mL
GROSS WEIGHT AFTER ANALYSIS: balance 364005   DATE SEALED: 5/13/08
106.3 g

FORM DEA-86 (6-00) Reverse   *U.S. Government Printing Office: 2002 — 491-387/52008



